UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
GLORIA ZABALA,                           :
                                         :
                          Plaintiff,     :     REPORT AND
                                         :     RECOMMENDATION
              - against -                :
                                         :     05 Civ. 4483 (WHP) (RLE)
JO ANNE BARNHART,                        :
Commissioner of Social Security,         :
                                         :
                          Defendant.     :
```

**To the HONORABLE WILLIAM H. PAULEY, III, U.S.D.J.:**

## I. INTRODUCTION

Plaintiff Gloria Zabala ("Zabala") filed a complaint on May 9, 2005, seeking review of the Commissioner of Social Security's ("Commissioner") decision denying her claim for disability benefits under Titles II, 42 U.S.C. § 401; and XVI, 42 U.S.C. § 1382, of the Social Security Act ("the Act"), and rendering her ineligible for disability insurance and Supplemental Security Income ("SSI") benefits. This matter was referred to the undersigned by District Judge William H. Pauley III on July 1, 2005.

The Commissioner subsequently moved for judgment on the pleadings and to dismiss the complaint.[1] For the reasons set forth below, I recommend that the Commissioner's motion be **GRANTED**.

---

[1] On July 10, 2006, attorney Laurence Beck entered a notice of appearance on behalf of Zabala. Zabala's deadline to respond to the government's motion for judgment on the pleadings was extended from July 7, 2006, to August 9, 2006. A further request for extension to August 18, 2006, for Zabala to respond was made by attorney Beck, which the Court granted. However, no response to the motion for judgment on the pleadings was ever filed with the Court. This Court has attempted to contact attorney Beck by phone multiple times from September through December 2006. Attorney Beck was never reached, nor did he ever return the messages left for him by the Court.

## II. BACKGROUND

### A.   Procedural History

Zabala first filed an application for SSI benefits on August 18, 1999. *See* Transcript of Administrative Proceedings ("Tr."), at 29, 129-34. Her application was denied and she requested reconsideration, which was also denied. **Id**. at 59-61, 64-67. Zabala requested, and received, a hearing before an administrative law judge ("ALJ"). **Id**. at 42. At the hearing, she was represented by counsel. **Id**. On October 27, 1999, the ALJ issued a decision finding she was not disabled. **Id**. at 42-52. Zabala requested review by the Appeals Council, and, on July 12, 2002, the Appeals Council ordered that the case be remanded to the ALJ for further administrative proceedings. **Id**. at 56-58. On July 3, 2003, the ALJ held a second hearing. **Id**. at 656-81. Again, Zabala was represented by counsel. **Id**. at 656. On August 26, 2003, the ALJ issued a second decision, and again found that Zabala was not disabled. **Id**. at 29-36. Zabala petitioned for review by the Appeals Council, but her request was denied, and the ALJ's decision became the final decision of the Commissioner on February 24, 2005. **Id**. at 6-8. Zabala then filed this action.

### B.   Medical History

#### 1.   Zabala's Testimony

Zabala was born on November 10, 1944, **id**. at 129, 662, and completed the fourth grade in school. **Id**. at 148. She cannot communicate effectively in English, and testified through a Spanish interpreter. **Id**. at 29. She testified that she had worked as a "marathon assistant" for four months in the year preceeding her application for benefits. **Id**. at 148, 164. Her duties included passing water bottles and towels to runners. **Id**. at 164. Zabala testified that this

position required her to walk for three hours, stand for four hours, and sit for one hour.  **Id**. at 146.  She sometimes would have to bend or reach, but the position did not require her to lift any weight.  **Id**.  Prior to this position, Zabala was self-employed as a jewelry salesperson from approximately 1985 to 1992.  **Id**. at 43, 672-73.  On January 3, 2001, Zabala began working as a babysitter, which involved taking four children to and from school and caring for them for two to three hours after school.  **Id**. at 673-74.

Zabala was not employed from January 1998 through December 2000.  She claimed that she was unable to work because of high blood pressure and "nervous problems."  **Id**. at 143.  She complained of hearing voices and people knocking down her door, forgetting things, and confusion.  **Id**. at 153.  In her application, she stated that she was taking medication for her condition, but that it made her drowsy.  **Id**.at 154.  At her second hearing, however, she testified that she was taking four medications, and none of them were causing side effects.  **Id**. at 675.  She also testified that she believed her treatment was "somewhat" helping her condition.  **Id**.

With respect to her functioning, Zabala testified at her first hearing that she could stand for ten to twenty minutes, walk one mile, bend, sit, and carry one gallon comfortably.  **Id**. at 45.  She also claimed that her daughter took care of her home and did her shopping for her, while she stayed at home watching television and resting.  **Id**.  At her second hearing, she testified that she sometimes took care of her own house, but other times her daughter did it for her.  **Id**. at 677.  She claimed that she cooked "very little," maybe one to two times during the week.  **Id**.  She said that she spent her days watching soap operas, and that some days she never got dressed.  **Id**. at 677, 679.  She testified that she did not go out and engage in social activities, **id**. at 679, but that she did read the bible, and spend time with a friend who came to check on her nearly every day.

3

**Id**. at 677.

    2.    **Medical Assessments of Zabala's Condition**

Beginning in 1998, Zabala has had numerous medical examinations by doctors and other professionals for symptoms related to her depression and high blood pressure.

    a.    **Treating Sources**

    (1)    **Mental Health**

On April 30, and May 21, 1998, Zabala presented at the St. Barnabas Hospital emergency room with complaints of sleeplessness, hearing voices, nervousness, and tingling in her extremities. **Id**. at 357-58. The examining physician diagnosed an adjustment/anxiety disorder, and referred her to Fordham-Tremont Community Mental Health Center ("FTMH"). **Id**. at 359. At her first appointment at FTMH, on June 16, 1998, Dr. Maria Sandos observed that Zabala was alert and fully oriented, but suffering from some persecutory delusions. **Id**. at 221-22. Dr. Sandos diagnosed Zabala as having major depression of moderate severity and hypertension. **Id**. at 223. She prescribed individual therapy, and the medications Zoloft and Buspar. **Id**. at 224-25. Zabala attended weekly therapy at FTMH throughout 1998, and reported that she felt "somewhat better" with medication. **Id**. at 227-28, 271-76, 325. In December 1998, Dr. Sandos changed Zabala's prescriptions to Buspar and Remeron, and Zabala reported an improved mood on her two subsequent visits. **Id**. at 267, 276A. In January 1999, Zabala stopped attending her therapy sessions, and FTMH closed her case in April 1999. **Id**. at 328-29. In May 1999, Zabala had a second intake evaluation at FTMH, and her medications were resumed. **Id**. at 331, 368-71. The examining physician found that Zabala's attention, speech, and thought processes ranged from fair to good, but that her insight into her condition was fair to poor. **Id**. at 368-70. Zabala was

diagnosed with moderate, recurrent major depression, without psychotic features. **Id**. Zabala attended one subsequent appointment, but then did not keep additionally scheduled appointments, and her case was closed. **Id**. at 323-34, 417-19, 423-25.

In June 2000, Zabala returned to FTMH, and had third intake evaluation. **Id**. at 417. The examining physician, Dr. Albert Scublinsky, diagnosed her as having major depression and a general anxiety disorder. **Id**. at 417. Zabala received regular treatment at FTMH from June 2000 through January 2001. **Id**. at 451-71, 583, 604-22. During this time, she was observed as being less anxious and free of any psychotic features. **Id**. at 452-53, 458, 463-67. In December 2000 and January 2001, she reported an increase in stress and depressive symptoms, but her condition returned to stable in February 2001. **Id**. at 472-79.

### (2) Physical Health

On September 29, 1998, Zabala was examined by Dr. Jasjit Pawha at Kings-M.D. Medical Services. **Id**. at 208-10. Dr. Pawha diagnosed Zabala with both hypertension and depression and anxiety disorder. **Id**. at 210. With regard to her physical abilities, Dr. Pawha found that Zabala was not impaired "for sitting, standing, walking, carrying, and lifting." **Id**. He also found that she could push and pull without limitation, and her finger-hand dexterity was normal. **Id**.

Zabala also sought treatment at St. Barnabas Hospital on six occasions between May 1999 and November 2000. Id. at 351, 503, 511, 520. On May 11, 1999, Zabala presented at the emergency room with complaints of leg pain and numbness. **Id**. at 351-56. During this visit, and a follow-up visit occurring a week later, the treating physician ordered blood and urine tests, and x-rays. **Id**. at 342-46. The doctor ruled out a diagnosis of hyperglycemia, **id**. at 351-52, and

5

noted that Zabala's blood pressure was well-controlled with medication. **Id**. at 336. On May 16, 2000, Zabala returned to the emergency room, and this time complained of dizziness and headache. **Id**. at 503-04, 506-09. The treating physician conducted a physical exam, and discharged her in "good" condition with instructions to follow up with FTMH for her depression. **Id**. at 504, 506-09. On July 11, 2000, Zabala received follow-up care at St. Barnabas, and the examining physician assessed her hypertension as being under good control with medication. **Id**. at 511, 514. On two subsequent visits in November 2000, Zabala presented with no complaints, and her diagnosis remained unchanged. **Id**. at 520-28.

        **b.**        **Consulting and Non-Treating Sources**

            **(1)**        **Mental Health**

On December 3, 1998, Zabala was examined by a consulting psychiatrist, Dr. Robert Cicarell. **Id**. at 237-39. Dr. Cicarell observed that she was alert, with normal speech and memory, but that her mood was depressed. **Id**. Dr. Cicarell diagnosed Zabala with major depression of moderate intensity, but without psychotic features, and found that she had a "limited to fair" ability to understand, carry out and remember instructions in a work environment. **Id**. Two state agency physicians completed mental residual functional capacity assessments based on Zabala's medical records. **Id**. 240-43, 294-97. In December 1998, Dr. Khalil found that Zabala had marked limitations in her ability to understand, remember, and carry out detailed instructions; and moderate limitations in her ability to concentrate, interact socially, and adapt to a work environment. **Id**. at 240-41. He found that she had no limitations in carrying out simple instructions or making simple work-related decisions. **Id**. In February 1999, Dr. Anderson found that Zabala was moderately limited in her ability to perform activities

according to a schedule, maintain regular attendance, respond appropriately to changes in the workplace, set realistic goals, and make independent plans.  **Id**. at 294-95.  He assessed that she had no significant limitations in other areas relating to work, or in understanding, memory, or social interaction.  **Id**.

Zabala's counsel also had her examined by a psychiatrist.  **Id**. at 400-09.  On June 25, 2002, Dr. Azariah Eshkenzai found that Zabala was "unable to be gainfully employed" at the time of the examination in 2002.  **Id**. at 401A.  He observed that, while she was aware of time and place, her memory was fair, her mood depressed, and her thought processes productive but slow.  **Id**. at 401.

### (2)    Physical Health

Two state agency physicians reviewed Zabala's medical records, and assessed her physical residual functional capability.  **Id**. at 229, 277.  One doctor found that Zabala had no limitations whatsoever in the areas of posture, manipulation, vision, communication, or environment.  **Id**. at 229-33.  As to her exertional limitations, the doctor found that she could occasionally lift fifty pounds and frequently lift twenty-five pounds, and that she could either sit or stand for about six hours in an eight hour work day.  **Id**. at 230.  A second doctor found that Zabala had no limitations with respect to physical abilities.  **Id**. at 278-82.

### III. DISCUSSION

**A.    Standard of Review**

The reviewing court does not assess the claimant's eligibility *de novo*.  **Pratts v. Chater**, 94 F.3d 34, 37 (2d Cir. 1996); **Jones v. Sullivan**, 949 F.2d 57, 59 (2d Cir. 1991).  The court must uphold a denial of benefits that is supported by substantial evidence, **Alston v. Sullivan**, 904

F.2d 122, 126 (2d Cir. 1990), even where the court's independent analysis of the evidence would differ from the Commissioner's.  **Rutherford v. Schweiker**, 685 F.2d 60, 62 (2d Cir. 1982). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," **Richardson v. Perales**, 402 U.S. 389, 401 (1971) (*quoting* **Consolidated Edison Co. v. NLRB**, 305 U.S. 197, 229 (1938)), "in light of other evidence that detracts." **Alston**, 904 F.2d at 126.

**B.     Determination of Disability**

To qualify for disability benefits, an individual must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (1994).  A claimant is not considered disabled if she can engage either in her previous work or in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and 1382c (a)(3)(B).

Social Security regulations set forth a five-step inquiry by which the Commissioner is to evaluate a claim for SSI disability benefits:

1. Is the claimant currently employed?

2. If the claimant is not employed, does she have a "severe impairment" limiting her capacity to work?

3. If the claimant has a severe impairment, is the impairment one enumerated in 20 C.F.R. pt. 404, subpt. P, app. 1?  If the claimant has an enumerated impairment, the Commissioner will find the claimant disabled.

4. If the claimant does not have a listed impairment, does she possesses the residual functional capacity to perform her past relevant work?

5.      If the claimant is unable to perform her past work, is there other work which she could perform, considering her physical capacity as well as her age, education, experience, and training?

*See* 20 C.F.R. §§ 404.1520, 416.920 (2005); **Tejada v. Apfel**, 167 F.3d 770, 774 (2d Cir. 1999); **Perez v. Chater**, 77 F.3d 41, 46 (2d Cir. 1996). At this final step, the Commissioner must "produce evidence to show the existence of alternative substantial gainful work which exists in the national economy and which the claimant could perform, considering not only [her] physical capability, but [also] [her] age, [her] education, [her] experience and [her] training." **Parker v. Harris**, 626 F.2d 225, 231 (2d Cir. 1980). *See* **Balsamo v. Chater**, 142 F.3d 75, 79-80 (2d Cir. 1998).

C.    **The ALJ's Decision is Supported by Substantial Evidence**

As Zabala was not employed during the closed period for which she sought benefits, the ALJ passed to step two of the disability determination. The ALJ found that Zabala's physical impairment, high blood pressure, was not a severe impairment because it caused no limitations on her ability to work, and because Zabala's representative acknowledged at the hearing that only her mental impairment could be considered severe. This decision was supported by the numerous medical reports finding her to be without physical limitations. Tr. at 208, 229, 277, 351, 503, 511, 520.

The ALJ did find that Zabala's mental condition was a severe impairment, but not so severe that it met or equaled the criteria of the listed impairments described in Appendix 1 of the Regulations. *See* 20 C.F.R. pt. 404, subpt. P, app. 1; Tr. at 30. The ALJ then found that Zabala had "the residual functional capacity to perform all exertional levels of work that are unskilled in

9

nature." Tr. at 35. The ALJ determined that Zabala was capable of returning to her former work as a marathon assistant and self-employed jewelry salesperson, both of which were unskilled work. **Id**. In addition, the ALJ found that, even if Zabala could not return to her previous employment, she was not disabled because she was capable of performing work that existed in the national economy, considering her age, education, and residual functional capacity. **Id**. at 34-35.

The ALJ's decision is supported by substantial evidence. While three doctors diagnosed Zabala with a depression-related disorder, **Id**. at 221-22, 368-70, 417, they also determined that the disorder was not severe or disabling as she was alert and fully oriented and her speech and thought processes ranged from fair to good. **Id**. at 221-22, 368-70, 452-53, 458, 463-67. Zabala's initial report of auditory hallucinations was resolved with medication. **Id**. at 221-22, 452-53, 458, 463-67. Two doctors found that she retained her ability to comprehend and respond, and that both her recent and remote memory were fair. **Id**. at 221-23, 369. A third doctor found that Zabala was alert and her attention was good, and that she had fair social judgment. **Id**. at 426-27. A SSA examining physician did find that Zabala's memory and concentration were impaired. **Id**. at 238. However, he also determined that her thought process was logical and coherent, her judgment was fair, and there was no evidence of psychotic features. **Id**. One doctor contradicted these findings, instead concluding that Zabala was unable to be gainfully employed. **Id**. at 401A. The ALJ's decision that Zabala's impairment was not severely limiting is supported by substantial evidence despite this one contradictory finding. The ALJ is not required to "reconcile explicitly every conflicting shred of medical testimony." **Fiorello v. Heckler**, 725 F.2d 174, 176 (2d Cir. 1983).

While Zabala did not have any physical limitations, the ALJ found that her mental condition resulted in some non-exertional impairments, which, combined with her lack of work experience, limited her to unskilled, simple work. **Id**. at 34. Based on this determination, the ALJ applied "the Medical-Vocational Guidelines of Appendix 2 of the regulations" to conclude Zabala was not disabled. **Id**. at 34-35. "[Application of the grid guidelines and the necessity for expert testimony must be determined on a case-by-case basis. If the guidelines adequately reflect a claimant's condition, then their use to determine disability status is appropriate." **Bapp v. Bowen**, 802 F.2d 601, 605-06 (2d Cir. 1986). The ALJ adequately identified and considered Zabala' non-exertional impairment, her depression, and determined that her functional capacity for simple and unskilled work was not significantly reduced by her mental health. Although the ALJ did not state that Zabala's mental health had no bearing on her ability to work, the ALJ noted her lack of exertional limitations and evaluated her minimal non-exertional limitations, pointing to the medical findings. The Court finds that there was substantial evidence for the ALJ's conclusions.

## IV. CONCLUSION

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten (10) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable William H. Pauley, III, 500 Pearl Street, Room 2210, and to the chambers of the undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See* **Thomas v. Arn**,

474 U.S. 140, 150 (1985); **Small v. Secretary of Health and Human Services**, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(e).

**DATED: January 29, 2007**
New York, New York

Respectfully Submitted,

*/s/ Ronald L. Ellis*

The Honorable Ronald L. Ellis
United States Magistrate Judge

Copies of this Report and Recommendation were sent to:

**Plaintiff, *Pro Se***
Gloria Zabala
1800 Story Avenue, Apt. #6B
Bronx, New York 10473

**Defendant**
Assistant United States Attorney John E. Gura
United States Attorney for the Southern District of New York
86 Chambers, 3rd Floor
New York, New York 10007