UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
                              :
GLORIA ZABALA,                :
                              :
            Plaintiff,        :     05 Civ. 4483 (WHP)
                              :
      -against-               :     MEMORANDUM AND ORDER
                              :
MICHAEL J. ASTRUE,            :
Commissioner of               :
Social Security,              :
                              :
            Defendant.        :
                              :
------------------------------X

WILLIAM H. PAULEY III, District Judge:

        Plaintiff Gloria Zabala ("Zabala") brings this action under the Social Security Act, 42 U.S.C. § 405(g) (the "Act"), seeking review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") benefits. On January 28, 2007, Magistrate Judge Ronald L. Ellis issued a report and recommendation (the "Report") that this Court grant the Commissioner's motion for judgment on the pleadings. After de novo review of the record and Zabala's objections, the Report is affirmed and adopted.

BACKGROUND

I. Procedural History

        On August 19, 1998, Zabala filed an application for SSI benefits. (Administrative Record filed by the Commissioner ("R.") 29, 129-34.) That application was denied on December 21, 1998. (R. 59-61.) Zabala's request for reconsideration was denied on February

24, 1999. (R. 64-67.) On September 30, 1999, Zabala appeared with counsel at a hearing before an Administrative Law Judge ("ALJ"). (R. 42.) On October 27, 1999, the ALJ found that Zabala was not disabled under the Social Security Act. (R. 43-52.) Zabala appealed that decision. On July 12, 2002, the Appeals Council remanded her case to the ALJ for further review, finding that Zabala's depression "constitute[d] a severe impairment" and directing the ALJ to assess her residual functional capacity. (R. 56-58.) On July 3, 2003, Zabala appeared with counsel for a second ALJ hearing. (R. 656-81.) On August 26, 2003, the ALJ issued a second opinion finding that Zabala was not disabled. (R. 29-36.) On February 24, 2005, the Appeals Council denied Zabala's request for review, rendering the ALJ's decision final. (R. 6-8.) On April 14, 2005, Zabala commenced this action under Section 205(g) of the Social Security Act. On August 4, 2005, Plaintiff was awarded SSI benefits as of March 16, 2005, pursuant to a subsequent application for benefits.

II. The Administrative Hearing

    A. Zabala's Testimony

Zabala was born on November 10, 1944 and has a fourth grade education. (R. 129, 148.) She worked as a "marathon assistant" for four months in 1997 (R. 148, 164), and was self-employed as a jewelry salesperson from 1985 to 1992 (R. 43, 672-73). On January 3, 2001, Zabala began working as a babysitter, taking four children to and from school and caring for them for two to three hours daily. (R. 673-74.) Social Security Administration records show that Zabala earned $9,605 in 2001. (R. 141.)

Zabala was not employed from January 1998 through December 2000, the closed period for which she seeks benefits. (R. 666.) Zabala claims that she was unable to work during

that time because of high blood pressure and "nervous problems," including auditory hallucinations, persecutory fears, forgetfulness, and general confusion. (R. 143, 153.) In her application, Zabala stated that her niece believed the medication Zabala was taking for her condition made her drowsy. (R. 154.) At the second hearing, however, Zabala testified that she was taking four medications with no apparent side effects, and that her treatment "somewhat" ameliorated her condition. (R. 673-75.)

B. Documentary Evidence

On April 30 and May 21, 1998, Zabala was examined at the St. Barnabas Hospital emergency room. (R. 357-58.) The examining physician diagnosed her with an adjustment/anxiety disorder and referred her to the Fordham-Tremont Community Medical Health Center ("FTMH"). (R. 359.) On June 16, 1998, Zabala's treating physician at FTMH diagnosed her with hypertension and major depression of moderate severity, and prescribed the medications Zoloft and Buspar, as well as weekly therapy sessions. (R. 223-25.) After attending therapy sessions through 1998, Zabala felt "somewhat better." (R. 227-28, 271-76, 325.)

On December 3, 1998, a consulting psychiatrist diagnosed Zabala with major depression of moderate intensity, and found that she had "limited to fair" ability to understand, carry out, and remember work instructions. (R. 237-39.) In December 1998, another consulting psychiatrist found that Zabala was able to carry out simple instructions and make simple work-related decisions. (R. 240-41.) In February 1999, a third consulting psychiatrist determined that Zabala was moderately limited in her ability to perform scheduled activities, maintain regular attendance, respond appropriately to workplace changes, make independent plans, and set realistic goals. (R. 294-95.) The psychiatrist found no limitations in other work-related areas, understanding, memory, or social interaction. (R. 294-95.)

In January 1999, Zabala stopped attending her weekly therapy sessions and taking her medications, and FTMH closed her case in April 1999. (R. 328-29.) In May 1999, Zabala resumed taking her medications after a second intake evaluation at FTMH. (R. 331, 368-71.) On May 25, 1999, she was diagnosed with moderate recurrent depression. (R. 368-70.) Zabala attended one more appointment, but failed to keep subsequent appointments, and her case was closed again. (R. 323-34, 417-19, 423-25.)

On June 20, 2000, Zabala returned to FTMH, and underwent a third intake evaluation. (R. 417.) The examining physician diagnosed Zabala with major depression and general anxiety disorder and gave her a global assessment of functioning rating ("GAF") of forty-five, reflecting serious symptoms. (R. 417-18.) Eight days after she returned to treatment, her examining psychiatrist reassessed her GAF at fifty-five, reflecting only moderate symptoms. (R. 427.) Zabala received regular treatment at FTMH from June 2000 through January 2001, and was observed to be less anxious and free of any psychotic features. (R. 451-71, 463-67, 583, 604-22.)

## DISCUSSION

I. Standard of Review

The Social Security Act provides that the "findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); see also Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); Reynoso v. Apfel, No. 97 Civ. 2234 (SAS), 1998 WL 61002, at *6 (S.D.N.Y. Feb. 11, 1998). "Substantial evidence" in this context is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting

Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Accordingly, this Court cannot disturb a Commissioner's disability determination—or any subsequent administrative decisions—if they were based on "substantial evidence."

II. Applicable Law

In evaluating disability claims, the Commissioner is required to make a five-step inquiry pursuant to 20 C.F.R. §§ 404.1520 and 416.920: (1) whether the claimant is engaged in any substantial gainful activity; (2) if so, whether the claimant has a "severe impairment" which significantly limits his ability to work; (3) if so, whether the impairment is one of the conditions for which the Commission presumes disability; (4) if not, whether the claimant is able to perform his past work despite the disability; and (5), if not, whether the claimant can perform any other work. Curry v. Apfel, 209 F.3d 117, 122 (2d. Cir. 2000). The burden of proving the first four steps is on the claimant, while the burden of proving the fifth is on the Commissioner. Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002).

In undertaking this five-step process, the Commissioner must consider: (1) objective medical facts and clinical findings; (2) diagnoses and medical opinions of examining physicians; (3) the claimant's subjective evidence of pain and physical incapacity as testified to by himself and the individuals who observed him; and (4) the claimant's age, educational background, and work history. Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1996).

III. Zabala's Objections[1]

Zabala objects that the Report erroneously concludes that the ALJ's decision was based on substantial evidence. Specifically, she asserts that the Report fails to consider: (A) inconsistencies in the ALJ's findings; (B) inconsistencies between the findings of the Appeals Council and the ALJ; (C) the ALJ's failure to develop the record; (D) the ALJ's improper conclusion that Zabala's employment rendered her ineligible for benefits; (E) the ALJ's failure to consider Zabala's low GAF score; and (F) the ALJ's failure to consult a vocational expert. Zabala further objects to the Report because she contends that her 2005 SSI award indicates that she is entitled to disability benefits for 1999 and 2000. The Court addresses each objection in turn.

A. Inconsistencies in the ALJ's Findings

The regulations require the ALJ to determine whether a "severe impairment" limits a claimant's ability to perform work. See 20 C.F.R. §§ 404.1520, 416.920; see also Bush v. Shalala, 94 F.3d 40, 44-45 (2d Cir. 1996). Having determined that Zabala's depression was a "severe impairment," the ALJ determined that it was not an impairment for which disability is presumed. See 20 C.F.R. pt. 404, subpt. P, app. 1 (listing those impairments that necessitate a finding of disability). The ALJ then assessed Zabala's "residual functional capacity based on all of the relevant medical and other evidence in [the] case record," see C.F.R. § 416.920(e), and found that her emotional impairment would not prevent her from performing simple and unskilled labor. (R. 30.) Finally, the ALJ considered Zabala's age, education and residual

---

[1] In addition to her specific objections, Zabala seeks to "incorporate by reference" arguments that she made to the Appeals Council. All objections, however, must be specifically tailored to the magistrate judge's proposed finding and recommendation. See Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C). Accordingly, this Court will consider only arguments presented in Zabala's Memo in Support of her Objections to Report and Recommendations, dated February 20, 2007.

functional capacity and found that she was capable of performing work that existed in the national economy. (R. 34-35.) See 20 C.F.R. §§ 404.1520, 416.920 (2005). Accordingly, this Court finds that the ALJ's determinations that Zabala suffered from a severe impairment and was capable of performing work were not inconsistent.

B. Failure to Heed Appeals Council's Findings

Similarly, the ALJ's determination is not inconsistent with the Appeals Council's finding that Zabala's depression "constitute[d] a severe impairment." (R. 57.) As discussed above, a "severe impairment," alone, does not entitle Zabala to benefits. Indeed, the Appeals Council itself, having determined that Zabala suffered from a "severe impairment," ordered the ALJ to assess whether Zabala's residual functional capacity was in fact limited. (R. 57.) Accordingly, this Court finds that the ALJ's decision was not inconsistent with that of the Appeals Council.

C. Failure to Obtain Complete Medical Report

It is well-settled that the ALJ must develop the record. See Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999); Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996); Echevarria v. Sec'y of Health and Human Servs., 685 F.2d 751, 755 (2d Cir. 1982). The ALJ must make "every reasonable effort" to help the plaintiff get the required medical reports. 20 C.F.R. § 404.1512(d). This duty exists even when a claimant was represented by counsel. Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996). This duty, however, does not extend to documents that are irrelevant to the determination. See Jones v. Sullivan, 949 F.2d 57, 60 (2d Cir. 1991).

In this case, the ALJ failed to obtain a complete copy of an unsigned, partial questionnaire completed by a treating psychiatrist in June 2002. (R. 33, 496-98.) However, the questionnaire is irrelevant because it was created more than a year and a half after the period for

which Zabala is seeking benefits and expressed no opinion about Zabala's disability during that period. See Jones, 949 F.2d at 60. Accordingly, the ALJ's failure to obtain a complete version of this report does not render its determination inadequately supported.

D. Ineligibility for Benefits Due to Employment

In order to qualify for disability benefits, an individual must be unable to engage in any substantial gainful activity. See 42 U.S.C. § 423(d)(1)(A). At the time of the ALJ's determination, an individual who earned more than $700 per month was presumed be to be engaged in substantial gainful activity. See 20 C.F.R. § 416.974(b)(2)(B); SSA Notice, 66 Fed Reg. 54,047, 54,052 (2001); SSA Notice, 65 Fed Reg. 63, 663, 63, 667 (2000). The ALJ properly determined that Zabala was engaged in substantial gainful activity in 2001, when she earned $9,605.00—or an average of $800.41 per month—as a babysitter. (R. 141, 666.) See 20 C.F.R. § 416.920(a)(4)(i), (b); 20 C.F.R. § 416.974(a), (b)(2). Indeed, Zabala's attorney conceded this point at the July 1, 2003 administrative hearing. (R. 666-67.) Accordingly, the ALJ correctly determined that Zabala's work as a babysitter rendered her ineligible for benefits as of January 2001.

E. Failure to Consider Low GAF Score

While the "law gives special evidentiary weight to the opinion of the treating physician," Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 117 (2d Cir. 1998), the ALJ is not required to "reconcile explicitly every conflicting shred of medical testimony." Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir. 1983). Nor is the ALJ required to mention or discuss every single piece of evidence in the record. See Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983) (per curiam) (Where "the evidence of record permits [the court] to glean the rationale of an ALJ's decision, [the ALJ is not required to explain] . . . why he considered particular evidence

unpersuasive or insufficient to lead him to a conclusion of disability."); Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982); Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981); Barringer v. Comm'r Soc. Sec., 358 F. Supp. 2d 67, 79 (N.D.N.Y Feb. 24, 2005). Here, while the ALJ did not specifically discuss Zabala's low GAF score, the ALJ did expressly discuss the clinical notes that accompanied the score. (R. 31-32.) Moreover, this GAF score was assessed when Zabala had forgone all mental health treatment for more than one year (R. 417-18), and was followed eight days later by a GAF score of fifty-five, which is indicative of only moderate symptoms. (R. 427.) Accordingly, this Court finds that the ALJ's failure to discuss Zabala's GAF score, alone, does not render its determination inadequately supported.

F. Failure to Consult a Vocational Expert

Generally, the Commissioner meets his burden of determining that a claimant is capable of performing work "by resorting to the applicable medical vocational guidelines." 20 C.F.R. pt. 404, subpt. P, app. 2 (1986); see also Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999) (quoting Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986)). If the guidelines do not adequately reflect a claimant's condition—that is, if a claimant's non-exertional impairments "significantly limit the range of work permitted by his exertional limitations"—administrative law judges are required to consult with a vocational expert. See Bapp, 802 F.2d at 605-06 (quoting Blacknall v. Heckler, 721 F.2d 1179, 1181 (9th Cir. 1983) (per curiam)). The "mere existence of a non-exertional impairment does not automatically . . . preclude reliance on the guidelines." Bapp, 802 F.2d at 603. In this case, the guidelines adequately reflected Zabala's condition because there was substantial evidence to show that her non-exertional limitations did not affect her ability to perform unskilled work. (R. 35.) Accordingly, the ALJ was not required to consult with a vocational expert, and its reliance on the guidelines was entirely appropriate.

G. Subsequent Benefits Award

Evidence is material to a benefits determination only if it is "relevant to the claimant's condition during the time period for which benefits are denied." Lisa v. Sec'y of the Dep't of Health and Human Servs., 940 F.2d 40, 43 (2d Cir. 1991); Brown v. Barnhart, No. 02 Civ. 4523 (SHS), 2003 WL 1888727, at *11 (S.D.N.Y. Apr. 15, 2003). Accordingly, the fact that Zabala was determined to be eligible for disability benefits in 2005, more than four years after the period at issue, is immaterial to the outcome of this action.

## CONCLUSION

For the reasons stated above, this Court adopts the Report and Recommendation of Magistrate Judge Ronald L. Ellis, and the Commissioner of Social Security's motion for judgment on the pleadings is granted. The Clerk of Court is directed to mark this case closed.

Dated: January 14, 2008
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.